APPEAL OF REAL ESTATE TRUST & INSURANCE CO. AND COURTNEY REALTY CORPORATION.

Docket No. 3541.          Promulgated July 30, 1927.

The petitioners were not personal service corporations during the year 1919.

*Abram R. Serven, Esq.*, for the petitioners.
*J. Arthur Adams, Esq.*, for the Commissioner.

sometimes referred to as the Trust Company), and the Courtney Realty Corporation (hereinafter sometimes referred to as the Courtney Company), in the amounts of $6,341.74 and $2,589.03, respectively. The petitioners are affiliated corporations.

The sole error alleged is the Commissioner's refusal to accord the petitioners classification as personal service corporations for the year 1919.

### FINDINGS OF FACT.

The Real Estate Trust & Insurance Co. and the Courtney Realty Coporation are Virginia corporations with their principal places of business at Norfolk.

The Trust Company was organized at about 1904 to take over the business of two real estate firms and an insurance agency then operating in Norfolk. Its capital stock was issued for the good will of these three firms.

Some time prior to 1909 the Trust Company and R. A. Wainwright and Charles McI. Tunstall, two of its stockholders, entered into an agreement to lease a business building to be erected in Norfolk. Under the agreement the owners of the building were to be paid an amount equal to 6 per cent per annum on construction cost plus the land value. The rent accrued as the owners' investment was made in the progress of construction.

A formal lease was entered into by the parties on January 1, 1909. It provided for a 20-year term at an annual rental of $15,648, free of all taxes, assessments, maintenance, insurance, etc., and required the lessees to post bond for faithful performance of their covenants. Shortly after its execution Wainwright and Tunstall assigned their interests in the lease to the Trust Company. To January 1, 1909, the lessees had incurred or assumed a deficit of approximately $21,000 in connection with this lease.

The Courtney Realty Corporation was organized in 1907 and commenced business in 1909 when the lease above described was assigned to it by the Trust Company. The Courtney Company's sole business during 1919 was the operation of the six-story building covered by the lease, which is known as the Dickson Building.

The Courtney Company issued $25,000 in stock to the Trust Company in payment for the lease. This stock was subsequently transferred to the Trust Company's stockholders and it represents all of the Courtney Company's outstanding stock during 1919.

The stockholders and officers of the two companies during 1919 were:

| Name | Stockholdings | |
| | Trust Co. | Courtney Co. |
| --- | --- | --- |
| | *Per cent* | *Per cent* |
| Charles McI. Tunstall, president_____ | 50 | 50 |
| Richard Tunstall, vice president_____ | 25 | 25 |
| Charles McDermott, jr., secretary and treasurer_____ | 25 | 25 |

The balance sheet of the Trust Company at December 31, 1919, follows:

### ASSETS

| | | |
| --- | --- | --- |
| Cash: Funds in banks and office_____ | | $1, 180. 61 |
| Notes receivable: Schedule 1_____ | | 15, 762. 53 |
| Accounts receivable: | | |
|     Tenants and clients_____ | $6, 923. 70 | |
|     Courtney Realty Corporation_____ | 76, 583. 75 | |
|     Charles McI. Tunstall, personal_____ | 6, 095. 28 | |
|     Richard Tunstall, personal_____ | 1, 944. 26 | |
|     Charles McDermott, personal_____ | 9, 434. 91 | |
| | | 100, 981. 90 |
| Investments: | | |
|     Stocks and bonds, schedule 2_____ | 30, 850. 00 | |
|     Real estate_____ | 10, 674. 70 | |
| | | 41, 524. 70 |
| Equipment: Office furniture and fixtures_____ | | 2, 116. 30 |
| Good will _____ | | 50, 000. 00 |
| | | 211, 566. 04 |

### LIABILITIES

| | | |
| --- | --- | --- |
| Notes payable: Schedule 3_____ | | 78, 269. 00 |
| Accounts payable: | | |
|     Landlord's accounts_____ | $8, 352. 92 | |
|     Courtney Realty Corp_____ | 46, 000. 00 | |
|     Martha Taliaferro_____ | 50. 00 | |
|     Mrs. L. W. Childress_____ | 70. 00 | |
|     Elvira J. Wainwright_____ | 125. 00 | |
| | | 54, 597. 92 |
| Reserves: | | |
|     Accrued interest on mortgage_____ | 110. 00 | |
|     For bad and doubtful accounts_____ | 688. 54 | |
| | | 798. 54 |
| Over and short account_____ | | . 98 |
| Reserves: Depreciation on office furniture and fixtures_____ | | 531. 23 |
| Mortgage: First mortgage—Princess Ann property_____ | | 10, 000. 00 |
| Capital stock: 500 shares common stock, par value $100 per share_ | | 50, 000. 00 |
| Surplus: | | |
|     Balance per ledger—Dec. 31, 1918_____ | —$53. 53 | |
|     Add: Net gain for year_____ $17, 588. 75 | | |
|     Less: Adjustment of notes payable____ 166. 85 | | |
| | 17, 421. 90 | |
| | | 17, 368. 37 |
| | | 211, 566. 04 |

"Notes receivable—Schedule 1," $15,762.53, represents 14 notes. Three of these notes, totaling $9,888.32, were given to cover, in part, stockholders' open accounts. The Trust Company had been unable to pay adequate regular salaries to its officers. It had therefore made advances to them over a period of years, such advances being represented in part by the notes mentioned. When financial conditions permitted, earnings were credited against these notes in a manner effecting a distribution according to stockholdings.

Two of the notes, totaling $5,000, were given by Richard Tunstall to Charles McI. Tunstall and Charles McDermott in payment for his stock and had been transferred to the Trust Company by the payees to be credited on their accounts. Eight of the notes, totaling $374.21, represent rent payments by a tenant of a company client.

The last note, in the amount of $500, was received by the Trust Company as commission for securing a loan and it was the only note held by the Trust Company on which interest was payable.

Accounts receivable.—"Tenants and clients" represents the balance of charges against landlords for repairs, taxes, etc. Sums so expended by the Trust Company were recovered by deductions from subsequent monthly rents.

"Courtney Realty Corporation" represents advances to the Courtney Company over a long period.

"Personal" represents the balance above that covered by notes of the Trust Company's advances to the officers in lieu of adequate salaries.

"Accounts receivable" were all noninterest bearing.

"Investments—Stocks and bonds—Schedule 2" represents the Trust Company's stockholdings in three corporations, totaling in par value $6,350; bonds of the Courtney Company of the par value of $12,500; Victory Loan bonds, $7,000, and a 5/33 interest in a brickyard.

Two items of the stock and the interest in the brickyard were received as organizing commissions.

The third stock item consisted of $1,000 capital stock of the Tidewater Insurance Co. The Trust Company had purchased this stock at the solicitation of the Insurance Company with which it did a large volume of business and payment had been made by crediting dividends.

"Courtney Realty Corporation bonds" represents mortgage notes issued by the Courtney Company against its capitalization of the Dickson Building lease.

"Victory Loan bonds" were bought for patriotic motives rather than as an investment.

" Real Estate " consisted of two items. The Trust Company had managed the organization of the Princess Ann Hotel Co., receiving stock as commissions. Upon subsequent burning of the hotel and failure of the hotel company, the Trust Company took over the property, assuming a mortgage of $7,000, which was later increased to $10,000. This item is offset on the balance sheet by a mortgage liability of $10,000.

The second real estate item, in the amount of $674.40, represents a personal transaction of the stockholders. It is not a company asset.

The " good will " was paid in for capital stock on organization.

" Notes payable—Schedule 3 " represents the following:

(1) 16 sixty and ninety day notes to six Norfolk banks, all dated during October, November and December, 1919, and totaling $59,625.00.

(2) One demand note to R. W. Galt, $16,644.

(3) One three year note dated July 10, 1916, to J. J. McCormick, $2,000.

These notes represent renewals of notes accumulated over a period of years. The loans were made on the personal endorsements of the stockholders rather than on the Trust Company's credit.

Accounts payable.—" Landlords accounts " represents rentals collected and remaining unremitted to the landlords, meanwhile being used in the business.

" Courtney Realty Corporation—$46,000 " represents proceeds of sales of $30,000 of the Courtney Company's bonds and $16,000 of its notes.

Three items totaling $245 represent salaries due employees.

" Reserves—Accrued interest on mortgage," refers to a mortgage item charged off prior to this statement.

The Trust Company's profit and loss statement for the calendar year 1919 follows:

### INCOME

| | | |
|---|---:|---:|
| Commissions on rents | $13,164.21 | |
| Commissions on real estate sales | 17,003.16 | |
| Commissions on loans | 8,597.37 | |
| Rents | 1,970.35 | |
| | | $40,735.09 |

### EXPENSE

Operating:

| | |
|---|---:|
| Salaries | $14,475.81 |
| Stamps | 116.00 |
| Traveling | 305.44 |
| Advertising | 311.66 |
| Automobile | 261.32 |
| Charity | 280.00 |
| Christmas gifts | 150.00 |
| Printing and stationery | 242.20 |

Operating—Continued.

| | | |
|---|---:|---:|
| Office expense | $44. 34 | |
| Office rent | 1, 555. 00 | |
| Telephone and telegraph | 384. 64 | |
| Legal expense | 217. 53 | |
| Sundries | 879. 31 | |
| | | $19, 223. 25 |
| Overhead : | | |
| Insurance—Life | 2, 616. 85 | |
| Interest on mortgage bonds | 1, 112. 50 | |
| Interest | 6, 057. 28 | |
| Taxes | 890. 32 | |
| Depreciation | 213. 65 | |
| | | 10, 890. 60 |
| | | $30, 113. 85 |
| | | 10, 621. 24 |

*Net profit for year—Loss and gain*

| | Debits | Credits |
|---|---:|---:|
| Net operating gain for year—From above | | $10, 621. 24 |
| Net gain from sale—Marlborough Apartments | | 666. 71 |
| Net gain from sale—316–318 Church Street | | 5, 125. 00 |
| Dividends | | 1, 220. 00 |
| Loss on Liberty bonds sold | $44. 20 | |
| Balance to surplus | 17, 588. 75 | |
| | 17, 632. 95 | 17, 632. 95 |

Commissions on rents and sales represent the usual real estate brokers' commissions for effecting the rental or sale of property.

The Trust Company represented an insurance company as a loan agent. Loan applications were passed upon by it, and, subject to the approval of agents of the insurance company, loans were effected through mortgages running directly to the insurance company. The Trust Company's commission was paid by the borrower.

" Rents " represents the Trust Company's net income from a lease it held on a five-story business building known as the " Chamberlaine Building."

" Expense—Salaries " in the amount of $14,475.81 includes those paid the three stockholding officers which amount to approximately $10,000. The balance of this item was paid to office employees.

" Overhead—Interest," represents interest paid on bank loans during the year.

" Net Gain from sale Marlborough Apartments " represents the selling price of stock received about ten years prior to 1919 as a commission for sale of the apartment. The par value of this stock was $2,500.

The " Church Street " property had been purchased by Charles McI. Tunstall at a mortgage sale, principally to protect a friend whom he had induced to become a mortgage endorser for a client of the Trust Company. Because Charles McI. Tunstall's purchase of the property had arisen through the Trust Company's relation to the mortgagor, the other stockholders of the Trust Company had agreed that the matter should be handled as a company transaction, it appearing at the time that a loss would result.

Through providential circumstances a sale of the property was effected during 1919, from which the Trust Company derived a profit of $5,125.

" Dividends " relates to the securities held by the Trust Company.

The balance sheet of the Courtney Company at December 31, 1919, follows:

ASSETS

| | | |
|---|---|---|
| Cash: Funds in bank and office | | $600. 20 |
| Accounts receivable: | | |
| Real Estate, Trust and Insurance Company— | | |
| Proceeds bonds, Dickson Building | $30, 000. 00 | |
| Proceeds notes, payable | 16, 000. 00 | |
| | | 46, 000. 00 |
| Unexpired equity in Dickson Building lease | | 11, 249. 12 |
| | | 57, 849. 32 |

LIABILITIES

| | | |
|---|---|---|
| Notes payable—Schedule 1 | | 12, 300. 00 |
| Accounts payable: | | |
| Real Estate Trust & Insurance Company | 76, 583. 75 | |
| W. C. Dickson, rent paid in advance | 1, 304. 00 | |
| | | 77, 887. 75 |
| Reserves: | | |
| Accrued interest on 6% mortgage notes | $900. 00 | |
| Accrued interest on floating debt | 173. 98 | |
| | | 1, 073. 98 |
| Mortgage: | | |
| First mortgage—6% coupon notes— | | |
| Total issued | 40, 000. 00 | |
| Redeemed | 10, 000. 00 | |
| | | 30, 000. 00 |
| Capital stock: 250 Shares common stock par value $100 per share | | 25, 000. 00 |
| Deficit: | | |
| Balance as per ledger—December 31, 1918 | 95, 421. 96 | |
| Add: Net gain for period | 7, 009. 55 | |
| | | [1]88, 412. 41 |
| | | 57, 849. 32 |

[1] Indicates deficit.

"Accounts receivable—$46,000," represents the proceeds of bonds and notes of the Courtney Company credited to it on the accounts of the Trust Company.

"Unexpired equity in the Dickson Building lease" arises from the Courtney Company's capitalization of the lease, against which $25,000 in capital stock and $40,000 in mortgage bonds secured by notes had been issued. Of these bonds, $30,000 were outstanding at December 31, 1919.

"Notes payable—Schedule 1," represents the following described notes:

| Date | Term | Payee | Amount |
|---|---|---|---|
| Dec. 29, 1919 | 10 days | Mer. & Mec. Bank | $12,000.00 |
| Oct. 14, 1919 | 90 days | E. L. Myers | 300.00 |

These notes were issued for funds to meet current expenses.

"Accounts payable" to the Real Estate Trust & Insurance Co. represents the balance of advances to the Courtney Company by the Trust Company. The Courtney Company had operated at a deficit for approximately 10 years and the Trust Company had borrowed money to make continual advances to cover these deficits.

"Accrued interest on 6% mortgage notes" refers to the Courtney Company's mortgage bond secured by note.

"Mortgage—First mortgage—6% coupon notes," refers to the Courtney Company's mortgage bond secured by notes. The $30,000 of these mortgage notes outstanding or the proceeds thereof were held by the Trust Company to the credit of the Courtney Company.

"Capital Stock" was the stock issued in payment for the Dickson Building lease.

At December 31, 1919, the Courtney Company had a deficit of $88,412.41 accumulated over the period of its existence.

The profit and loss statement of the Courtney Company for the year 1919 follows:

INCOME

| | | |
|---|---|---|
| Rentals | $55,942.30 | |
| Loss: Commissions | 2,568.67 | |
| | | $53,373.63 |

EXPENSES

Operating:
| | |
|---|---|
| Salaries | $2,250.00 |
| Wages | 7,539.00 |
| Rent of building | 15,654.50 |

Operating—Continued.

Light and power_____ $1, 751. 95
Fuel_____ 1, 555. 73
Water _____ 100. 75
Miscellaneous_____ 2, 717. 78
Building supplies and expenses____ _____ 1, 911. 11
Repairs to building_____ ___ __ ____ 606. 90
Repairs to offices_____ 307. 65
Repairs to elevators_____ 311. 13
Loss and damage_____ 433. 36
Telephone and telegraph_____ 19. 55
Printing and stationery____ _____ _____ 31. 82
                                                      $35, 191. 23
Overhead:
Bond interest_____ _____ 1, 800. 00
Interest_____ 1, 086. 89
Amortization of lease_____ 1, 250. 88
Taxes _____ 5, 974. 95
Insurance_____ 1, 060. 13
                                                      11, 172. 85
                                                      $46, 364. 08

Net profit for period_____ 7, 009. 55

The entire income of the Courtney Company was derived from rentals under its lease of the Dickson Building.

The expense for " rent " refers to the lease of the Dickson Building.

" Bond interest " refers to the $30,000 of outstanding 6 per cent mortgage bonds.

" Interest " refers to bank loans, etc.

" Taxes " refers to the Dickson Building the lease of which obligated the lessee to pay taxes.

During 1919 the three stockholders were actively engaged in the businesses of the appellant corporations, devoting all of their time thereto with the exception that Richard Tunstall was incapacitated by illness for several months. The stockholders secured and transacted all business of the corporations, the only employees being clerical workers.

OPINION.

MARQUETTE: A personal service corporation is defined by section 200 of the Revenue Act of 1918 to be one " whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * *."

The statutory elements above set forth must concur. *Appeal of Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32; *Appeal of Scheffler Hair Colorine Co.*, 1 B. T. A. 61; *Appeal of Oliver-*

*Wright-Rainey Co.*, 2 B. T. A. 561; *Appeal of George A. Spring-meier Co.*, 6 B. T. A. 698; *Conklin-Zonne-Loomis Co.* v. *Commissioner*, 6 B. T. A. 795.

We believe that the appellant corporations herein fall so far short of meeting the statutory requirements that extended discussion is unwarranted.

A sufficient statement of the Trust Company's divergence may be made in the mention of four items; first, ownership and income from its lease of the Chamberlaine Building; second, profits from sale of the "Church Street" property; third, dividends; and fourth, the borrowing of large sums used to make advances to the Courtney Company and to some extent to the Trust Company clients, etc. See *Appeal of Seaboard Mills, Inc.*, 5 B. T. A. 575; *Appeal of George A. Springmeier Co.*, supra; *Conklin-Zonne-Loomis Co.*, supra, and *Matteson Co.* v. *Willcuts*, 12 Fed. (2d) 447.

The entire income of the Courtney Company was derived through its lease of the Dickson Building. The lease was a capital asset. This petitioner falls squarely within the Board's decision in the *Appeal of Newam Theatre Corporation*, 1 B. T. A. 887. See also *Appeal of J. L. Kelso Co.*, 1 B. T. A. 1264, and *Cotton Hotel Co.* v. *Bass*, 7 Fed. (2d) 900.

> *Judgment will be entered for the Commissioner on 15 days' notice, under Rule 50.*

Considered by PHILLIPS, MILLIKEN, and VAN FOSSAN.